Good morning and may it please the court. Rebecca Kurz, Federal Public Defender's Office for Mr. Mark Whitworth. Mr. Whitworth was accused of conspiracy and possession with intent to distribute methamphetamine. Law enforcement officers served a search warrant on his property. There was a shed detached from the residence and in that shed officers found 250 grams of methamphetamine in a bag wrapped in bubble wrap inside of a cardboard box. They found a digital scale. They found baggies inside of a toolbox, a police scanner and a security camera that allowed or fed into a monitoring system inside the shed. That evidence showed that drug trafficking was taking place. The question was who was doing the drug trafficking. Was it Mr. Whitworth along with one of the informants, Russell Walker, or was Mr. Walker acting on his own? After an opening statement, defense counsel made clear that he was admitting trafficking was going on. The defense was Mr. Whitworth didn't do it. It was Mr. Walker. In cataloging all the evidence that had been seized, one of the officers, an experienced highway patrol trooper said, he was asked, why did you seize those firearms? And he said, well, because Mark Whitworth is prohibited from having weapons. The natural inference to draw from that testimony is a negative one. The jury could have inferred he was a felon or at minimum inferred that he committed some type of bad act resulting in the stripping of his Second Amendment rights. Americans are well aware that they have a right to possess firearms. A reasonable juror would know that law, and it's not an obscure point that juries would be confused on. But counsel, didn't he decline the curative instruction? He declined a curative instruction. And the government cited numerous cases saying that when you decline a curative instruction and ask only for mistrial, that you waive the issue on appeal. But the more accurate way, I think, to describe that point of law is to say, you waive the, to the extent prejudice could have been cured by an instruction. Any remaining prejudice, the appellate court needs to assess for harm. But it was a curative instruction plus a willingness to grant the motion to strike, right? Yes. And so if you look at it, and if you look at our presumptions against prejudice, if the curative instruction is given and you grant the motion to strike, I mean, it's a very high burden to show that there is prejudice from that. So what is your best argument of prejudice in this particular case, given the rather overwhelming remainder of evidence in the case? Well, first, I think, would be the district court judge's remarks. And the district court judge felt, if we move to strike, if we give the instruction, that quote just gets out a red flag and waves it around. You can't stop these guys, referring to the jury, you can't stop these guys from thinking. And that's common kind of belief among lawyers and judges. But that, you know, we have always said that a curative instruction, we presume the jury's going to follow it, particularly if there's a motion to strike. And so I think the burden is that you have to show some prejudice. And my question is, just having the judge say, well, and you know what happened here is the judge denied the motion for a mistrial, came back the next day and said, how about a curative instruction and how about granting a motion to strike? And did it sua sponte? Right? Am I right about that? I believe so, yes. Yeah. I think that's accurate. And so, at that point, making the observation is, well, it's in the past, whether you want to draw attention or not to it, I don't see where that's, that really answers the prejudice question. Well, I think in determining prejudice, you have to look at the strength of the case. And I do disagree with you. I don't believe that they're overwhelming evidence. But you did not hear the judge's remark, right? The jury did not hear the judge's remark. So the prejudice has to be, has to be impact on the verdict. Well, the prejudice is just from the statement alone. It's not from anything the judge said. But in this But the prejudice is not apparent on its face. I think it is on its face when a witness says Mark Whitworth is prohibited from possessing firearms. That's a fact. Well, but it also brings It's not unfair prejudice if it's true. It is unfair prejudice when he has a presumption of innocence. And that presumption does not budge until the end of testimony. I don't think you've got a circuit support for that equation. Well, I may not have a case that says that. But the entire defense here was keyed around the fact that these two informants had horrible prior criminal history, that they were not credible witnesses. And you balance his presumption of innocence. But let's talk about a couple other things, too. A couple other facts on the record. According to the minute entries, documents 118, 119, the jury deliberated almost five hours over the course of two days. They deliberated about, I think, three hours. The afternoon of the second day came back, deliberated for two more hours. This was a short trial. This was five witnesses, took only a day and a little bit more to enter all the government's evidence. After the verdict was read, the prosecuting attorney asked the court its practice regarding allowing attorneys to talk to jurors. District court said, you probably saw what I saw. There were a couple of people that were pretty upset. And they're not going to want to talk to you. So, I think the fact that there's a couple of jurors pretty upset suggests they're thinking about something. Something has engaged them with that emotional reaction. The physical evidence from the shed was obviously admitted. But there were no controlled by's done at the residence. There was no surveillance done, suggesting high foot traffic around the residence. Jackson, one of the informants, had additional credibility problems. He said, after being prompted by the prosecuting attorney, that the property was a fortress. There were cameras in the trees, on the building, all facing front. Officer Prim, the officer who did the search, said there was one security camera on the house and it was non-operational. And then there was another camera pointed at the back of the house  It wasn't a fortress. Everybody today has a ring doorbell. Not everybody, but a lot of people today have a ring doorbell. It shows you on a camera who is standing on your front porch. That's not a nefarious or indicitive guilt in any way. Jackson's testimony gave the impression that when he purchased methamphetamine in 2018, that he was not allowed to purchase, supposedly. He said he was banned from the residence. He would sit in a vehicle out on the road and his friend would be sent down to purchase methamphetamine. John would go down, transcript at page 93. John would go down to the shed and then disappear in the shed and he'd come back with our stuff. I stayed in the car, page 94. Officer Prim described it this way. You can't see the road from that camera angle. The camera is on the front of the shed and you can't see the road. This is all not the issue we're arguing. Well, I think we have to... You want to establish it was a closed case. That doesn't establish prejudice from this question. What you've omitted, what I understand from the briefs, is that Sergeant Prim's first answer to the question was what I would call a race jest I answer. This is what we do when we find guns and drugs. Now, that's A, consistent with law, B, probative, and the jury can understand that and would likely give that much more emphasis in terms of why this evidence was coming in than the second part of the answer, which is, and he was a prohibited person, not explaining why. Immediately following on the heels of a litany of evidence that already established drug evidence. Curative arguments are terrible. They don't do any good. But we have more than a curative instruction here. We have the first half of the response to the question being probative, relevant, and non-prejudicial, much less unfairly prejudicial. I agree. And the jury is supposed to infer from the second part. It's a natural inference. And I agree with you. The first part of the statement perhaps had minuscule probative value. I don't agree that it was highly probative because everything had already established trafficking. I strongly disagree. An officer explaining the circumstances of an investigation which is relevant to the case is much more than, well, barely probative. It's an essential part of the case, of the government's case, indeed both parties' case. Well, I have no complaint that the firearms were admitted into evidence and he said he found them. My complaint is, if you're going to say you are prohibited from finding, possessing firearms, there's a reason for that. It doesn't just happen for no good reason. It doesn't mean he flunked an eye test. It means he did something bad. He has a bad character. Well, that's not necessarily true. You can be a prohibited person for being mentally defective, mentally ill. You can be a prohibited person for being dishonorably discharged from the military service. You can be a prohibited person if you simply renounced your U.S. citizenship. Right? All those people, there are a lot of, like, sort of non-terpitutous reasons for losing your license and things that you haven't even done. I mean, and, never mind. I don't really have a question. None of which, none of those reasons would I, in my opinion, would not be immediately apparent to a reasonable juror. I think United States versus True is of some assistance here. There's a case in which it was a felon in possession case. The defendant had six prior convictions. The court, now ultimately they upheld the admission of those convictions in 404B, in a ruling. But the court was careful to say we have to analyze the probative value of those six convictions. And we assume, perhaps, that the first one had some value. But at what point does probative value tip into prejudice after you've gone through those six things? And again, I know I've repeated this, but there is so much evidence of trafficking that had already been established and admitted in opening statement. Every one of the government's cases that it cites includes this language that cautionary instructions may be effective and they analyze that. But in every single case they go on to analyze for harmless error. And they do a careful case by case, fact by fact, assessment of that. So I don't think that can be skipped in this case. Also, I think that the district court made an error of law when it said page 113 the Eighth Circuit instructs mandates, whatever you want to say, they say I'm supposed to look for less than mistrial options first. They encourage the use of curative instructions. But the cases also say that a district court's decision whether to grant a mistrial is for abuse of discretion. District courts have that discretion. It is his decision whether to grant a mistrial. So the district court was of the opinion that he had to defer to Eighth Circuit precedent that I don't read in that fashion. Not when every case says no, you've got to look at the facts. You have to weigh the amount of prejudice. So there was no instruction I don't see any of those words used in the cases. What was the objection to that comment? The objection to which comment? You're just talking what the district court Oh, there was no objection to that comment. And so the judge is supposed to say oh wait a minute Sue Lisboni I just said something wrong. I have to clarify that I recognize I have discretion. Well what he was clarifying was that he had in the evening recess gone and looked at some cases and that's how he read the cases and that's an incorrect reading of this court's precedent. In my opinion none of the cases the government side say there's any type of command, instruction or mandate the district district courts get to assess the case for themselves and do what they think is appropriate and this court defers to it. This trial was not a drastic remedy here. This is the very first witness. We've had barely half day a little bit into the afternoon of testimony. So the victim is climbed. There's no victim who's had to suffer through a trial and the anxiety that that produces. There was a single expert. The government was going to not lose their experts. She worked for the highway patrol. She could have easily been called back for a retrial. The question that the prosecuting attorney asked was a bad one. And one more point. In the motion in Lemony Why was it a bad one? Why was it a bad one to ask him to explain his investigation? We don't need to ask why he seized the drugs. It's obvious. Firearms go together with guns. I totally can see that. It's not obvious. But I think that's the basis of why the government argues that it's admissible. Every criminal prosecutor and defense lawyer and every law enforcement agent and everyone who watches American movies like Scarface where he's doing drugs and carrying an AK-47 they do go together. And that's said over and over in the circuit precedent and that's why it's admissible. But the comment of you can't possess them I disagree. Thank you Your Honors. May it please the Court Brian Case on behalf of the United States in this matter. And I think the Court's hit on a lot of the issues that's been briefed and raised in here and a lot of what the government would say in its arguments. So I don't have a lot in addition to add unless the Court has some specific questions I'd just like to make a couple of quick points. Counsel I did a question about the striking of the potential juror. Yes, Your Honor. I think it's your position that that is unreviewable. Is that correct? That's correct, Your Honor. In this circumstance I think as we say in the brief there's a case, the Ganter case. I was going to ask you about that. That there was some review afforded in that case. But that case as we argue in our brief was unique because it was unique to a circumstance where we're talking about striking jurors based on a particular class by a protected class. In that case it was the challenge to that a juror was wrongfully stricken for cause based strictly on their race was the challenge in Ganter. And there's some cases in this Court's precedent that sort of read together I believe create a situation where there's a claim there to be said that you can't But you argue this categorically. You're arguing that you can't review this where there's no claim that there's a protected class implicated then we can't review it. Where there's a claim that there's a protected class implicated then I think Ganter might control. And I think that is because it goes into whether or not there would be an objection to using a preemptory here. In the  class, in the racial class, in the Batson circumstance where there is an objection to using a preemptory then the Court goes back and can look at the four claims. Inherent appearance of bias can never be reviewed. A situation in which a judge is concerned that a reasonable person aware of all these facts would think the judge shouldn't sit on this case. That's unreviewable bias. Because there's no protected class. It's just perception perceived bias.  perceived bias is the heart of 455. There's no claim in this case, Your Honor, that the jury that sat was biased in any way. Your claim is that we are  biased in any way. There's two pieces to that question. Let me take one step back from the question, Your Honor. Your question was it's clear that there's bias. Your question then said but then a preemptory is used. If it's clear that there's bias, then there's bias in the juror's sat. And the reason that's reviewable is because now there's a claim that there was a biased juror. Now, the right is implicated because the right is the right to have a fair jury. You can argue this all morning. All I have to say is nothing is more apt to lose me than when the government in an appellee's brief overreaches. And in my view, you are overreaching. Thank you, Your Honor. Were there any more questions about that second issue? Well, what was the why was there not an abuse of discretion if it's reviewable? If it's reviewable, I do think that the standard from Ganter would be having a sound basis. And in this case, I think the record is very clear that the district  was  about the appearance of bias. And I think that the district court was concerned about the appearance of bias. But it seems to me that he interjected more possibility of a problem by how he described his relationship with this potential juror. I'm friends with the parent. I've known her since she was, you know, went to the same church with her since she was a small child. I gave her a personal tour of the law school. I mean, listen, this is sort of unusual judge commentary on a relationship with a jury. I mean, I've tried 280 jury trials as a judge and I've never made those sorts of comments  the mother. I think that's a possible concern. I think the judge did feel some requirement to disclose the relationship and I think, in particular, the court was disclosing not only the relationship with the particular judge  the  why the objection was made. So, the court explained its reason to strike. There was an objection made and the district court didn't ... The analysis doesn't start until the objection is made and then the analysis turns on the response. I think, though, the comment was made not the comment was not the juror can't sit because of her mother. The comment was rather back to the judge.  judge said, why are we fighting over this juror. There is no statement you can have a juror of your choice and this is a defendant wanting a juror of their choice. The lawyer is trying to get the judge to do with a cause objection and the defense  is trying to preserve both. The defense counsel wants the juror. This is a circumstance where the defense counsel wants the bias juror. This is neither here nor there but it is a question I don't  the answer to. It looks like the judge sat down and said these are the jurors that I think should be removed for cause. Is that a practice in any district court? Is that a regular practice? I get where you don't make them move to strike them while they're in front of the jury so they know they have been moved to be struck by one side or the other. It seems like if a person gets a clearly disqualifying witness question, I'm a racist, I can't set it aside. The judge frequently says I'm inclined to remove that person  jury. Is that an  practice? It didn't strike me as unusual, Your Honor. I wouldn't say it was necessarily regular, but I've certainly seen courts do that before. Okay. I was just curious. Thank you. If there are any questions I think about the third issue would be the one we haven't touched yet? What about the first one? You want me to go into the first issue? Absolutely. Your time. That's what was argued and you're up here not in response to a question, not addressing what's been argued by the jury. I don't think this is a circumstance where the I think this is   that has to be broken down into what exactly happened at trial. There was a question, there was an objection, there was an objection, there was an objection to the question based on relevance and speculation. That objection was overruled so the question was allowed. I think the question clearly was relevant. That part, I don't think to the extent it was preserved, there's nothing I don't think really is merit to that appeal. So what we move really to what's being appealed is the motion for a mistrial. There was no objection to the answer when it was given. There was no motion to strike the testimony. At that point, that's all really that's here to be reviewed. And at that point, the district court offers, well, do you want to strike the testimony? No. Do you want to cure the obstruction? No. And that's trial strategy for the defense attorney. But it is not, it's just normal trial practice. You don't get to tell the court, it's my judgment that the statement was so insignificant that I wouldn't even want to draw attention to it by having it stricken. I don't want to draw attention to it by having a curative instruction and then come on appeal and say it was so significant you have to reverse the conviction. Because trial counsel made that choice that it wasn't insignificant, it was a statement with so little meaning. As it's the only issue that hasn't been touched on very quickly on the third issue, I think the facts from trial show that Whitworth was directing the conspiracy, that Whitworth was in charge of the conspiracy, and that Walker was effectively working for him, and under this court's case law that is sufficient for the application of the enhancement. If there are no further questions, the rest of    Thank you, Your Honor. First of all, you don't have time. I don't have time. I don't have time to answer all of your questions. The court's going to have to ask, well, what categories of people are we going to say are inherently biased? Those who have parents or exposure to defense, criminal defense attorneys? And it was obvious to see in this case, the case, it was either five, I think, four to six peremptory strikes against potential jurors who had familiar relationships with law enforcement officers. So how far are we going to go? Are we going to get in bigger and bigger jury polls where we're going to say, okay, all of these people are inherently biased. They haven't said anything that rises to the level of a strike for cause, but we're going to get rid of them. And so the problem here is you have the person who has the connection with the defense attorney struck, but not the others who have connections with law enforcement officers. So even though a person may not be in a protected class and this may not be an equal protection argument, there's a due process argument. And I don't think we could say that those due process challenges are categorically unreviewable. Judge, I again apologize for not realizing I was out of time. I appreciate you indulging me. Thank you. Watching the clock does not, as I can recall, that does not seem to be the most important part of arguing an appellate case. And so that's why they show us the clock so we can be pissed about it. The case has been thoroughly briefed and argued. We'll take it under advisement.